In re M & R APPAREL, INC., Debtor.

Samuel J. HEYMAN and Heyman Associates # 1, Movant,

v.

M & R APPAREL, INC., Respondent.

Bankruptcy No. 5–88–00699.
Motion No. 5–88–0195–M.

United States Bankruptcy Court,
D. Connecticut.

Nov. 10, 1988.

Marc J. Kurzman, Levett, Rockwood & Sanders, P.C., Westport, Conn., for movant.

Matthew R. Woods, Gladstone, Schwartz, Baroff & Blum, Bridgeport, Conn., for respondent.

MEMORANDUM AND DECISION ON RELIEF FROM AUTOMATIC STAY UNDER CODE § 362(d)(1); § 365(c)(3)

ALAN H.W. SHIFF, Bankruptcy Judge.

Samuel J. Heyman and Heyman Associates # 1[1] move for relief from the automatic stay provided by Bankruptcy Code § 362(a) to evict the debtor, M & R Appar-

---

1. Heyman Associates # 1 was not a party to the lease. Accordingly, the instant motion is treated as having been made by Samuel J. Heyman alone.

el, Inc., from retail space leased to M & R. M & R defends on the basis of its proposal to adequately protect Heyman by curing a nonpayment of rent default and assuming the lease under § 365(b)(1). The issue presented is whether there is cause for relief from the stay because under § 365(c)(3), the lease may not be assumed.

## BACKGROUND

By a lease dated March 24, 1981, Heyman rented nonresidential real property in the Compo Acres Shopping Center, located in Westport, Connecticut, to Clothes Place of Westport, Inc., for a term commencing June 1, 1981 and terminating July 31, 1991. Paragraph Thirty-third of the rider provided that monthly rent was due on the first day of every month. Paragraph Forty-first of the rider related to the assignment of the lease and provided in part:

Tenant shall have the right, without the consent of landlord, to assign or sublet the premises to an affiliated corporation, or a parent corporation, or to a subsidiary corporation or in connection with a bona fide corporate merger, reorganization or sale of all its assets to a financially responsible entity provided that (i) the use or purpose to be made of the demised premises shall be compatible with then existing tenancies at the shopping center and that such use or purpose does not violate any provisions of any other lease then in effect at the shopping center, and (ii) such assignment or subletting shall not release or in any manner affect the liability of the tenant or of the Guarantor hereunder.

On August 1, 1984, Clothes Place assigned the lease to M & R pursuant to paragraph Forty-first. Neither Clothes Place nor M & R asked for Heyman's consent.

M & R failed to pay rent due on April 1, 1988. On April 13, Heyman received a letter from attorney Alexander Breiner on behalf of Trim Fashions, Inc., advising that Trim Fashions had agreed to purchase all of M & R's assets, including the lease, pursuant to paragraph Forty-first, as to which Breiner sought Heyman's consent. No evidence was offered that Heyman responded to the letter or that M & R ever communicated directly with Heyman regarding the proposed assignment. M & R failed to pay May rent.

Paragraph Third of the lease related to defaults and provided in part:

Upon the happening of any one (1) or more of the defaults or events listed below, this lease and the term hereof shall, upon notice from Landlord to Tenant, wholly cease and expire, with the same force and effect as though the date so specified were the date hereinabove set forth for the expiration of the term (but Tenant shall remain liable to Landlord as herein provided):

(a) Tenant shall default in the payment of the rental reserved herein or any items of additional rent herein mentioned or any part of either, or in making any other payment, herein provided, for a period of five (5) days after written notice is given thereof by Landlord to Tenant.

Paragraph Seventeenth of the lease related to notice and provided:

All notices and demands, legal or otherwise, incidental to this lease, or the occupation of the demised premises, shall be in writing. If Landlord or its agent desires to give or serve upon Tenant any notice or demand, it shall be sufficient to send a copy thereof by certified mail, addressed to Tenant at the demised premises....

Paragraph Seventeenth of the rider also related to notice and provided:

Copy of all notices to David Rothstein, Esq., 60 State Street, Boston, MA 02109. The Landlord shall also send a copy of any notice of default by the Tenant to T.A.C. Group, Inc., 1274 Worcester Avenue, Natick, MA 01760 by certified mail. Said T.A.C. Group, Inc. shall have the right to cure any such default within the time specified in this lease.

On May 16, Heyman sent notice by certified mail of default to M & R which received it on May 17; David Rothstein, who received it on May 19; and T.A.C. Group, Inc., which never received it.

On May 23, Heyman served a notice to quit upon M & R. On June 6, Heyman commenced a summary process action in state court. Trial was scheduled for August 11, however, on August 10, M & R filed a voluntary petition under chapter 11 of the Bankruptcy Code. On August 18, Heyman filed the instant motion for modification of the automatic stay to permit continuation of the summary process action or, alternatively, for possession of the premises.[2] On August 24, M & R filed a motion to assume and assign the lease. There has been no payment of rent since the notice to quit was served.

## DISCUSSION

### I

### Relief from the Automatic Stay for Cause Property of the Estate

Code § 362(a)(3) provides that "a petition filed under § 301 ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." Section 541(a)(1) provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a) was intended to be interpreted broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); *In re Texaco, Inc.*, 77 B.R. 433, 436 (Bankr.S.D. N.Y.1987); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978) U.S. Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323 ("The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act....").

Heyman contends that service of the notice to quit terminated the lease by operation of law, so that at the commencement of this case, the lease was not property of the estate, thus warranting relief from the automatic stay for cause. Section 362(d) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

It is well settled that where the debtor will be unable to assume a lease pursuant to § 365(a),[3] there is cause for relief from the automatic stay. *See In re Memphis–Friday's Assoc.*, 88 B.R. 830, 843 (Bankr.W.D. Tenn.1988); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469, 472 (Bankr.E.D. Pa.1986); *In re 163rd Street Medical Corp.*, 47 B.R. 869, 871 (Bankr.S.D.Fla. 1985), *aff'd*, 67 B.R. 499 (S.D.Fla.1986); *Kearny Mesa Crossroads v. Acorn Investments (In re Acorn Investments)*, 8 B.R. 506, 510 (Bankr.S.D.Cal.1981); *Matter of Mimi's of Atlanta*, 5 B.R. 623, 627 (Bankr. N.D.Ga.1980), *aff'd*, 11 B.R. 710 (N.D.Ga. 1980).

A two-part test is applied to determine whether M & R may assume the lease. First, it must be determined whether the lease was terminated under applicable state law before the petition was filed. Section 365(c)(3) provides that "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor ... if ... such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." Second, it must be determined whether the termination would be reversed pursuant to applicable state anti-forfeiture law. *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill*

---

**2.** At oral argument, the debtor stated that if the motion for modification of the stay is granted, it would have no objection to this court awarding possession to Heyman, thus dispensing with action in the state court.

**3.** Code § 365(a) provides in part that a debtor-in-possession "may assume or reject any executory contract or unexpired lease of the debtor."

*Farms, Inc.)*, 841 F.2d 1467, 1473 (9th Cir. 1988); *City of Valdez, Alaska v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.2d 1089, 1091 (9th Cir.1985) (*citing Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.")); *In re Texaco, Inc., supra*, 77 B.R. at 436. The second step "permits the debtor-in-possession the same opportunities to avoid forfeiture of a lease or executory contract that it would have received under state law absent the bankruptcy proceedings." *City of Valdez, supra*, 775 F.2d at 1091. The burden as to both prongs of the test is on M & R. 11 U.S.C.A. § 362(g) (West 1979 & 1988 Supp.).

## II

### Termination of the Lease

### A.

### Notice of Default

■ Arguing that T.A.C. Group never received notice of default and that David Rothstein received only four days notice, M & R contends that Heyman did not comply with the notice of default provision in the lease, which was a condition precedent to serving a notice to quit. Central to M & R's position is that notice had to be actually received rather than merely mailed in order to be effective.

Heyman's real estate manager testified that she interpreted the notice provision to mean that notice to quit could be served only after five days had passed from *receipt* of the notice of default. However, "[i]n determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties." *Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985). *See also Robinson v. Weitz*, 171 Conn. 545, 551, 370 A.2d 1066 (1976).

The plain language of the lease refutes M & R's argument. Paragraph Seventeenth of the lease provided that when the

landlord wanted to give or serve any notice, "it shall be sufficient to *send* a copy thereof by [certified][4] mail...." (Emphasis added). Send means transmit toward the place of destination. *See Getty Refining and Marketing Co. v. Zwiebel*, 604 F.Supp. 774, 777 (D.Conn.1985) (finding notice of exercise of option to purchase was effective upon dispatch where lease provided that notice "shall be deemed to be duly given if forwarded [which the court found to mean send] by either party, by registered mail, to the other party at such party's address...."). The parties could have, but did not agree that notice would only be effective upon receipt. "The court may not and will not supply an added term to the agreement now deemed desirable by one party." *Id.* at 778. Heyman complied with the notice of default provision in the lease.

### B.

### Notice to Quit Possession

■ M & R contends that a final judgment in a state court summary process action is required to terminate a lease. There is no authority to support that view.

Connecticut General Statutes § 47a–23 provides:

> When a rental agreement or lease of any land or building ... terminates ... by reason of any expressed stipulation therein ... and the owner or lessor ... desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease ... he ... shall give notice to each lessee or occupant to quit possession of such land [or] ... building ... at least eight days before the termination of the rental agreement or lease ... *or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.*

While a tenant's nonpayment of rent does not automatically terminate the lease, it gives the landlord the option to terminate by some unequivocal act such as the service of notice to quit possession. *See May-*

---

**4.** The word certified was supplied by asterisk in   the text of paragraph Seventeenth.

ron's Bake Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 156, 176 A.2d 574 (1961); Chapel–High Corp. v. Cavallero, 141 Conn. 407, 411, 106 A.2d 720 (1954); Bridgeport v. Barbour–Daniel Electronics, Inc., 16 Conn.App. 574, 548 A.2d 744 (1988). Upon service of such notice, the tenant's rights under the lease are extinguished, and the tenant becomes a tenant at sufferance. Hous. Auth. of Town of E. Hartford v. Hird, 13 Conn.App. 150, 157, 535 A.2d 377 (1988); Rivera v. Santiago, 4 Conn.App. 608, 610, 495 A.2d 1122 (1985). Tenants at sufferance have only naked possession of the property. There is no rental agreement, but landlords may not wantonly or willfully injure them. See Small Business Inv. Co. v. Cavallo, 188 Conn. 286, 288–89, 449 A.2d 988 (1982); Welk v. Bidwell, 136 Conn. 603, 608–09, 73 A.2d 295 (1950); Rivera, supra, 4 Conn.App. at 610, 495 A.2d 1122 ("The statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them."); Conn.Gen. Stat.Ann. § 47a–7 (West 1986) (specifying landlord's responsibilities, e.g., running water and heat).

It is therefore well settled under Connecticut law that a notice to quit terminates a lease and reduces the lessee to a mere tenant at sufferance subject to eviction by summary process if the premises are not vacated eight days after the service of notice to quit. The eight day notice in § 47a–23 serves only to give the tenant time to vacate the premises. M & R concedes that notice to quit possession was served on May 12, 1988. It therefore follows that the lease had terminated by operation of law approximately two and one-half months before the petition was filed.

### III.

### Anti-forfeiture

Although the lease was terminated, Heyman may not regain possession of the premises without obtaining a summary process judgment in a state court, which may consider the equities of the case under an anti-forfeiture doctrine adopted in Connecticut. See Matter of Curio Shoppes, Inc.,

55 B.R. 148, 152 (Bankr.D.Conn.1985). Under such an analysis, M & R's naked possessory interest, which is property of its estate, 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.), 835 F.2d 427, 430 (2d Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988), might be a basis for enjoining eviction, which might make possible assumption under § 365(b)(1). See City of Valdez, supra, 775 F.2d at 1092; In re Texaco, Inc., supra, 77 B.R. at 436.

Under an anti-forfeiture doctrine, Connecticut courts will enjoin the forfeiture of a lease where the default was not the result of the tenant's willful neglect, the delay was slight, the loss to the lessor was small, or the hardship to the tenant was such that the conscience of the court would be shocked if forfeiture was not reversed. Nicoli v. Frouge Corp., 171 Conn. 245, 247, 368 A.2d 74 (1976); R & R of Connecticut, Inc. v. Stiegler, 4 Conn.App. 240, 243–45, 493 A.2d 293 (1985); Zitomer v. Palmer, 38 Conn.Supp. 341, 344, 446 A.2d 1084 (1982). See also Matter of Curio Shoppes, Inc., supra, 55 B.R. at 152. However, where the tenant's default was intentional, the equitable considerations of anti-forfeiture are not available. See Mobilia, Inc. v. Johonor M. Santos, et al., 4 Conn.App. 128, 131, 492 A.2d 544 (1985) ("[t]he deliberate failure on the part of the defendants [tenants] to tender the agreed monthly rent ... would not appear to allow the triggering of equitable relief or entitle [them] to an injunction.").

M & R has failed to meet the burden of proof as to equitable grounds for relief. M & R's only equitable argument is that Heyman failed to consent to the assignment to Trim Fashions, and that its nonpayment of rent never would have occurred if he had. The argument is without merit. Heyman had no obligation under paragraph Forty-first to consent. See supra at 566. As previously noted M & R was Clothes Place's assignee without Heyman's consent. Thus, his failure to consent did not excuse M & R's failure to pay rent.

## IV

### Conclusion

M & R's lease terminated as a matter of law prior to the commencement of this case. There has been no showing that M & R is entitled to equitable relief under the state's anti-forfeiture doctrine, there is no lease to assume, and, accordingly, there is cause for relief from the automatic stay. Heyman's motion is granted, a judgment of possession may enter in his favor, and IT IS SO ORDERED.[5]

---

**5.** Several identical questions of law are discussed in *Rich–Taubman Associates v. Masterworks, Inc. (In re Masterworks, Inc.),* 94 B.R. 262 (Bankr.D.Conn.1988).