**In re MASTERWORKS, INC., Debtor.**

**RICH–TAUBMAN ASSOCIATES, Movant,**

v.

**MASTERWORKS, INC., Respondent.**

**Bankruptcy No. 5–88–00540.**

**Motion No. 5–88–0176–M.**

United States Bankruptcy Court, District Connecticut.

Nov. 14, 1988.

Robert M. Dombroff, Walter E. Paulekas, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for movant.

Byron P. Yost, Irve J. Goldman, Evans and Baldwin, P.C., Bridgeport, Conn., for respondent.

## MEMORANDUM AND DECISION ON RELIEF FROM AUTOMATIC STAY UNDER CODE § 362(d)(1); § 365(c)(3)

ALAN H.W. SHIFF, Bankruptcy Judge.

Rich–Taubman Associates moves for relief from the automatic stay provided by Code § 362(a) to evict the debtor, Masterworks, Inc., from commercial space leased to Masterworks. Masterworks defends on the basis of its proposal to adequately protect Rich by curing a nonpayment of rent default and assuming the lease under § 365(b)(1). The issue presented is whether there is cause for relief from the stay because under § 365(c)(3) the lease cannot be assumed.

### BACKGROUND

By a lease dated December 27, 1983, Rich rented commercial property to Masterworks for a term commencing February 1, 1984 and terminating on January 31, 1991. The lease provided for minimum rent, percentage rent, and adjusted fixed minimum annual rent. Section 19.01, *see infra* at 265, provided for notice of termination prior to January 31, 1991 upon the happening of specified events. Section 16.01 required that Masterworks operate its business under the name of "Scandia Down Shop". On August 23, 1984, Masterworks and Scandia Down Corp. entered into a written franchise agreement under which Masterworks agreed to operate a retail outlet for Scandia related merchandise under the trade name Scandia Down Shop.

Masterworks stopped paying rent in May, 1988. On June 27, Rich served a notice to quit upon Masterworks for nonpayment of rent pursuant to Connecticut General Statutes § 47a–23. On June 30, Masterworks filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 2, Rich filed the instant motion, requesting relief from the automatic stay, so that it could evict Masterworks.

### DISCUSSION

#### I.

##### Relief from the Automatic Stay

##### Property of the Estate

Code § 362(a)(3) provides that "a petition filed under § 301 ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." Section 541(a)(1) provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a) was intended to be interpreted broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); *In re Texaco, Inc.*, 77 B.R. 433, 436 (Bankr.S.D. N.Y.1987); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 3622; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978) U.S.Code Cong. & Admin.News 1978, p. 5868 ("The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act...").

Rich contends that service of the notice to quit terminated the lease by operation of

law, so that at the commencement of this case, the lease was not property of the estate and could therefore not be assumed, thus warranting relief from the stay for cause. Section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

It is well settled that where the debtor will be unable to assume a lease pursuant to Code § 365(a)[1] there is cause for relief from the automatic stay. *See, e.g., In re Memphis–Friday's Assoc.,* 88 B.R. 830, 843 (Bankr.W.D.Tenn.1988); *In re Future Growth Enterprises, Inc.,* 61 B.R. 469, 472 (Bankr.E.D.Pa.1986); *In re 163rd Street Medical Corp.,* 47 B.R. 869, 871 (Bankr.S. D.Fla.1985), *aff'd,* 67 B.R. 499 (S.D.Fla. 1986); *Kearny Mesa Crossroads v. Acorn Investments (In re Acorn Investments),* 8 B.R. 506, 510 (Bankr.S.D.Cal.1981); *Matter of Mimi's of Atlanta,* 5 B.R. 623, 627 (Bankr.N.D.Ga.1980), *aff'd,* 11 B.R. 710 (N.D.Ga.1980).

A two part test is applied to determine whether Masterworks may assume the lease. First, it must be determined whether the lease was terminated prepetition under applicable state law. Section 365(c)(3) provides that "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor ... if ... such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." Second, it must be determined whether the termination would be reversed under the state's nonforfeiture doctrine. *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.),* 841 F.2d 1467, 1472 (9th Cir.1988); *City of Valdez, Alaska v. Waterkist Corp. (In re Waterkist Corp.),* 775 F.2d 1089, 1091 (9th

Cir.1985) (*citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed. 2d 136 (1979) ("Property interests are created and defined by state law.")); *In re Texaco, Inc., supra,* 77 B.R. at 436. The second step "permits the debtor-in-possession the same opportunities to avoid forfeiture of a lease or executory contract that it would have received under state law absent the bankruptcy proceedings." *City of Valdez, supra,* 775 F.2d at 1091. The burden of proof as to both prongs of the test is on Masterworks. 11 U.S.C.A. § 362(g) (West 1979 & 1988 Supp.).

## II.

### Termination of the Lease

### A.

### Notice Provisions of the Lease

Section 19.01 of the lease provided: RIGHT TO RE–ENTER. In the event of any failure of Tenant to pay any rental or other charges due hereunder when due, or any failure to perform any other of the terms, conditions or convenants of this Lease to be observed or performed by Tenant for more than thirty (30) days after written notice of such default shall have been mailed to the Tenant, or if Tenant shall fail to move into the premises and to commence the conduct of its business on [February 1, 1984], or fail to continually operate its business pursuant to section 7.02 or for the purpose specified in section 7.01 hereof, or fail to operate under the name specified in Section 16.01 hereof, or if Tenant shall abandon said premises, or permit this Lease to be taken under any writ of execution, then the Landlord, besides other rights or remedies it may have, shall have the right by three (3) days' notice to declare this Lease terminated and the term ended, in which event, upon expiration of such three (3) day period, this Lease and the term hereof shall expire, cease and terminate with the same force and effect as though the date set forth in said no-

---

1. Code § 365(a) provides in part that a debtor-in-possession "may assume or reject any executory contract or unexpired lease of the debtor."

tice were the date originally set forth herein. . . .

Masterworks contends that the lease must be strictly construed against Rich, its author, and that under such a reading, *the thirty day notice* of default provision in section 19.01 is applicable to any notice to quit served by Rich for nonpayment of rent. *See Sturman v. Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983) ("[W]hen two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it. . . ."); *Perruccio v. Allen,* 156 Conn. 282, 285, 240 A.2d 912 (1968) ("If the language is ambiguous, the construction which favors the lessee should be adopted."). There is no merit to that argument.

The meaning of section 19.01 is clear. As the court stated in *Collins v. Sears, Roebuck & Co.,* 164 Conn. 369, 373–74, 321 A.2d 444 (1973), "[w]hen the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous. . . ." The 30 day notice provision is in an isolated clause separated from other clauses by the word "or" and applies only "[i]n the event of . . . any failure [of Masterworks] to perform any other of the terms, conditions or covenants of this Lease to be observed or performed by [Masterworks] for more than thirty (30) days after written notice of such default . . .". Rich was under no obligation to give Masterworks thirty days notice before serving a notice to quit.

■ Masterworks also argues that *the three day notice* provision in section 19.01 applied to any notice to quit possession; there is no merit to that argument either. Again it is observed that the plain meaning and intent of that section is clear. Had the lease intended to provide that it could not be terminated unless Rich gave a 3 day notice, language to that effect would have been used. Instead, the lease employs the unambiguous phrase ". . . then the Landlord, *besides other rights or remedies* it may have . . ." (emphasis added). The 3

day notice provision did not limit Rich's right to serve a notice to quit.

## B.

### Notice to Quit Possession

■ Masterworks admits that Rich served a notice to quit possession upon it, pursuant to Connecticut General Statutes § 47–23(a), on June 27, 1988, three days prior to the June 30 commencement of this case. Masterworks makes no claim that the notice to quit was defective or improperly served. Its only defense is that Rich did not comply with the notice provisions in the lease; that argument has been considered and rejected. There is, however, a remaining issue. Does the commencement of a bankruptcy case prior to the expiration of the eight day period provided by § 47a–23(a) stay the termination of the lease?

Connecticut courts narrowly construe and strictly follow the state's summary process statute. *Jefferson Garden Assoc. v. Greene,* 202 Conn. 128, 143, 520 A.2d 173 (1987). § 47a–23(a) provides:

> When a rental agreement or lease of any land or building . . . terminates . . . by reason of any expressed stipulation therein . . . and the owner or lessor . . . desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease . . . he . . . shall give notice to each lessee or occupant to quit possession of such land [or] . . . building . . . at least eight days before the termination of the rental agreement or lease . . . *or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.*"

While a tenant's nonpayment of rent does not automatically terminate a lease, it gives a landlord the option to terminate by some unequivocal act such as the service of notice to quit possession. *Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961); *Chapel–High Corp. v. Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720 (1954); *Bridgeport v. Barbour–Daniel Electronics, Inc.,* 16

Conn.App. 574, 548 A.2d 744 (1988). Upon service of such notice, the tenant's rights under the lease are extinguished, and the tenant becomes a tenant at sufferance. *Hous. Auth. of Town of E. Hartford v. Hird,* 13 Conn.App. 150, 157, 535 A.2d 377 (1988); *Rivera v. Santiago,* 4 Conn.App. 608, 610, 495 A.2d 1122 (1985). Tenants at sufferance have only naked possession of the property. There is no rental agreement, but landlords may not wantonly or willfully injure them. *See Small Business Inv. Co. v. Cavallo,* 188 Conn. 286, 288–89, 449 A.2d 988 (1982); *Welk v. Bidwell,* 136 Conn. 603, 608–09, 73 A.2d 295 (1950); *Rivera, supra,* 4 Conn.App. at 610, 495 A.2d 1122 ("The statutory obligations of the landlord and tenant continue even when there is no longer a rental agreement between them."); Conn.Gen.Stat.Ann. § 47a–7 (West 1986) (specifying landlord's responsibilities, *e.g.,* running water and heat).

It is therefore well settled under Connecticut law that a notice to quit terminates a lease and reduces the lessee to a mere tenant at sufferance subject to eviction by summary process if the premises are not vacated eight days after service of the notice to quit. The eight day notice in § 47a–23 serves only to give the tenant time to vacate the premises. Since the notice to quit was properly served three days before the petition was filed, Masterworks had no lease with Rich as of the commencement of this case.

### III.

### Anti-forfeiture

█ Although the lease was terminated, Rich may not evict Masterworks without obtaining a summary process judgment in state court, which may consider the equities of the case under an anti-forfeiture doctrine adopted in Connecticut. *See Matter of Curio Shoppes, Inc.,* 55 B.R. 148, 152 (Bankr.D.Conn.1985). Under such an analysis, Masterworks' naked possessory interest, which is property of its estate,

*48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 430 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988), might be a basis for enjoining eviction, which might make possible assumption of the lease under § 365(b)(1). *See City of Valdez, supra,* 775 F.2d at 1092; *In re Texaco, Inc., supra,* 77 B.R. at 436.

Under an anti-forfeiture doctrine, Connecticut courts will enjoin the forfeiture of a lease where the default leading to termination was not the result of a tenant's willful neglect, the delay was slight, the loss to the lessor was small, or the hardship to the tenant was such that the conscience of the court would be shocked if forfeiture was not reversed. *Nicoli v. Frouge Corp.,* 171 Conn. 245, 247, 368 A.2d 74 (1976); *Zitomer v. Palmer,* 38 Conn. Supp. 341, 344, 446 A.2d 1084 (1982). *See also Matter of Curio Shoppes, Inc., supra,* 55 B.R. at 152. However, where the tenant's default was intentional, the equitable considerations of anti-forfeiture are not available. *See Mobilia, Inc. v. Johonor M. Santos, et al.,* 4 Conn.App. 128, 492 A.2d 544 (1985) ("[t]he deliberate failure on the part of the defendants [tenants] to tender the agreed monthly rent ... would not appear to allow the triggering of equitable relief or entitle [them] to an injunction.").

In an effort to invoke the anti-forfieture doctrine, Masterworks makes various claims regarding an alleged plot by Rich and Scandia to lease the space to another tenant. *Masterworks' Brief at 5, 13–14.* In support of that claim Masterworks offered to produce, at some later date, the testimony of its principal. However, apart from the fact that the time to produce evidence was at the hearing, not some future date,[2] as Rich points out, Masterworks had stopped paying rent well before it claims it learned of the alleged conspiracy. Apparently Masterworks believes that it is improper for a landlord to explore the possibility of replacing a tenant who does not

---

**2.** No claim was made that the principal was unavailable at the time of the offer to produce

evidence in the future.

pay rent with one who will. Masterworks overlooks the condition precedent to its quest for equitable relief, namely, a credible and reasonable explanation for its failure to pay rent.

Masterworks relies on *In re Eureka S.R.R., Inc.*, 72 B.R. 813 (Bankr.N.D.Ca. 1987), for the proposition that it sustained the burden of proving the absence of cause for relief from the stay by merely identifying the anti-forfeiture doctrine, rather than showing by credible evidence that there is a reasonable prospect that the lease would have been reinstated by a state court under that doctrine. Masterworks' counsel either failed to locate or failed to cite the most recent Ninth Circuit authority, which holds that in considering the anti-forfeiture defense, bankruptcy courts must determine whether the lease would have been saved under state law. *See Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1472 (9th Cir. 1988).

Masterworks has paid no rent for more than five months and has offered no explanation that would excuse that default. This is no mere technical breach which might justify equitable relief. While Rich might attempt to replace Masterworks and receive a higher rent in the future, it is a fact that for at least five months, it has received no rent. Equitable relief is clearly not available to Masterworks.

## IV.

### Conclusion

◼ Masterworks' lease terminated as a matter of law prior to the commencement of this case. There has been no showing that Masterworks is entitled to equitable relief under the state's anti-forfeiture doctrine, there is no lease to assume, and, accordingly, there is cause for relief from the automatic stay. Rich's motion is granted, and

IT IS SO ORDERED.[3]

---

3. Several identical questions of law are discussed in *Samuel J. Heyman and Heyman Associates #1 v. M & R Apparel, Inc. (In re M & R*

*Apparel, Inc.)*, 92 B.R. 565 (Bankr.D.Conn.1988).