[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTIONS TO SET ASIDETHE VERDICT AND FOR REMITTITUR
This case was tried to a jury which on August 1, 1997, rendered its verdict in favor of the plaintiff. The jury awarded the plaintiff $14,669.69 in economic damages and $616,000 in non-economic damages for a total award of $630,669.69. The jury found no comparative negligence on the part of the plaintiff.
The evidence disclosed, and the jury could have found, that CT Page 13596 on January 26, 1993, in the early afternoon, the plaintiff, accompanied by his wife, drove to the parking lot at the rear of 3606-3610 Main Street in Bridgeport for the purpose of visiting with Albert Testo (third party defendant), owner of the Connecticut Jewelry Exchange, one of the businesses located upon said premises. As he alighted from his vehicle, his foot slipped on ice causing him to slide forward on his back. Unfortunately, his left foot slid into a wooden pallet caught in, stuck and immovable, in ice, resulting in a sudden twisting and fractures of the left tibia and left fibula. The plaintiff "heard my leg pop."
These fractures were described as "a compression fracture of the distal tibia (near ankle) with elevation of the anterior aspect of the tibial plafond by 5-10 mm"; a comminuted fracture with impaction of the anterior aspect of the tibia; and a comminuted oblique fracture in the distal shaft of the left fibula. (Ex. Q, St. Vincent's Hospital Record.) The fractures required open reduction, bone grafting, and the insertion of pins to hold the fracture fragments and bone graft in place.
The jury heard the testimony of Dr. Donald Dworkin, who described the fractures as severe intra-articular fractures (within the joint), which cause arthritis in the joint and that it was reasonably probable that arthritis is now present and that future surgery would eventually be needed, an ankle fusion or ankle replacement.
According to Dr. Dworken, the plaintiff's injuries and extended period of casting and disuse caused weakness of the left quadriceps muscle and, following cast removal and weight bearing, the plaintiff related eight episodes of his left leg giving way. One such episode on June 14, 1996, resulted in the plaintiff's falling while ascending a staircase and thereby sustaining a spiral oblique fracture of the shaft of the right fibia. This fracture, opined Dr. Dworken, was causally related to the left leg injuries. Dr. Dworken testified that plaintiff's right leg fracture resulted in a permanent partial disability of 15 percent of the leg from the knee downward. Dr. Allan Comen, a chiropractor, who treated the plaintiff for the initial left leg fractures, testified that the plaintiff sustained a permanent partial disability of 20 percent of the left ankle.
The court charged the jury as to both actual and constructive notice, as third party defendant Albert Testo testified that CT Page 13597 water was being deposited on the surface of the parking lot by a hose extending through the basement doors in order to remove water from the basement. He further testified that this was the source of the water that froze, forming the ice on which the plaintiff slipped. The jury, therefore, could have found that the defendant created the ice condition thereby affording defendant actual notice of the icy conditions. As to constructive notice, the evidence disclosed that the last precipitation prior to plaintiff's fall on the afternoon of January 26 was .02 hundredths of an inch at 2:00 a.m. on January 25. Prior to the 25th, the only significant precipitation was during the a.m. hours of January 22.
The unchallenged evidence before the jury was that there was no sand or other abrasive material on the ice at the time of plaintiff's fall. Consequently, the court believes that the jury could support a verdict for the plaintiff on the basis of either actual or constructive notice on the part of the defendant with respect to the icy condition of the parking area.
With respect to the testimony of Albert Testo, the court inquired of all counsel as to whether the court should submit an interrogatory to the jury as to whether or not a hose was present and depositing water onto the parking area surface. All counsel requested that the court not submit an interrogatory to the jury. Therefore, the general verdict of the jury prevails on the issue of notice.
Defendant claims error in the court's denial of defendant's application to introduce evidence of prior criminal convictions for the purpose of impeaching the testimony of the plaintiff and Albert Testo. The plaintiff had one burglary and two larceny convictions in 1978 at the age of 16 and 1980 at the age of 18. At the time of trial, these convictions were 19 and 17 years old respectively. Under State v. Geyer, 194 Conn. 1 (1984), three factors should be examined by the court in determining whether a prior conviction should be admitted:
1. the extent to which the admission is likely to prejudice a party;
2. the significance of the prior crime as bearing on the party's truthfulness; and,
3. the remoteness in time of the prior conviction or CT Page 13598 convictions.
The court determined that the convictions in question were too remote in time and that the risk of severe prejudice to the plaintiff far outweighed the probative value of admitting the convictions. "It is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." State v. Askew,44 Conn. App. 280, 287 (1997) citing State v. Roman, 6 Conn. App. 189, 192
(1986). The court believes that its exclusion of this conviction evidence was a proper exercise of its discretion.
The defendant, in addition, sought to introduce evidence of plaintiff's two convictions for possession of narcotics on pleas of guilty in June of 1993. The court exercised its discretion to exclude this evidence, relying on State v. Geyer, supra, which stated that "Although [narcotics] conviction reflect adversely on the defendant's general character, they have no special or direct materiality to the defendant's credibility." At p. 13. In exercising its discretion to exclude this conviction evidence, the court acted on its belief that admission of narcotic convictions from the plaintiff's past would risk severe prejudice to the plaintiff as it might direct the jury's attention away from the only relevant issues of liability and damages.
The issue of the use of a prior conviction to impeach the credibility of a witness was presented to the court as well concerning Albert Testo. The defendant sought to impeach Testo's credibility by offering evidence of an alleged conviction occurring in 1982. Defendant offered a docket sheet of the Federal District Court making reference to a plea of guilty. At not time did defendant offer a certified copy of the record of conviction. Nor did defendant make an offer of proof by questioning Testo concerning any such conviction. The court believes its sustaining of the objection to the offer of the docket sheet was proper. Furthermore, the fact that any such conviction was 15 years old would have mitigated against its admission as its prejudicial effect would far outweigh its probative value.
With respect to the third party defendant Albert Testo, the evidence revealed that the defendant had instituted a summary process action against him and had served him with a notice to quit possession on January 11, 1993. (Plaintiff's exhibit J.) This notice directed Testo to "move out of the premises you CT Page 13599 occupy at 3610 Main Street on or before January 25, 1993. Upon service of such notice to quit, the tenant's rights under the lease are extinguished, and the tenant becomes a tenant at sufferance. In Re: Masterworks, Inc., D.Conn. 1988, 94 B.R. 262,267. Plaintiff's exhibit AA, a letter from the defendant to United Insurance Agencies, states that "At the time of this supposed incident . . . he [Albert Testo] was already in Florida since the 24th of December, 1992."
At the time of jury selection, counsel for defendant Molin produced a copy of a recorded statement of the defendant dated December 9, 1993. In this statement, the defendant responded as follows:
"Q. O.K. And who was the tenant at that premises?
A. At 3610 it was Albert Testo.
Q. O.K. And was he evicted from the premises at all?
 A. The first, between the first and second week of January.
Q. O.K. Was he out of the premises by January 26th?
A. Yes."
This statement, although known to the defendant since December 9, 1993, was not disclosed or produced through discovery despite the plaintiff's specific interrogatory and request for production as to statements of the defendant. This statement and the uncontroverted evidence of the defendant's serving a notice to quit upon Albert Testo and his quitting the premises prior to the date of the plaintiff's fall extinguished any rights and responsibilities set out in a prior lease, the basis of the defendant's claims against Albert Testo. Consequently, the court's granting of a directed verdict in favor of the third party defendant Albert Testo was proper.
Defendant claims error in the court's precluding the admission of photographs at the tail end of the trial. These photographs were taken at the defendant's request one day before the plaintiff's fall in connection with an insurance claim due to water damage in the basement. They showed an area of the rear parking area and a portion of the rear of the building at CT Page 13600 2606-3610 Main Street. The court excluded the photographs because the defendant had denied that "photographs depicting the accident scene" existed in her answer to interrogatory 6 of her compliance to plaintiff's interrogatories (exhibit BB). The defendant, having failed to disclose the existence of said photographs, the court could not allow the introduction of said photos.
The defendant claims error in the court's allowing evidence with respect to the third party Testo's testimony concerning a sump pump and hose depositing water onto the parking area where plaintiff's fall occurred. The defendant claims that such evidence constitutes a "theory of liability . . . not pleaded in the complaint." (Motion to Set Aside (D)). Paragraph 6 of the plaintiff's complaint alleges, "The injuries and damages suffered by the plaintiff were the result of the negligence and carelessness of the defendant Esther Molin . . . in that she failed to properly maintain the parking area so that ice accumulated creating a defective and dangerous condition." Under such allegation, the plaintiff is free to prove the source of the water that froze; that is, whether it came from precipitation or some other cause. The court's allowance of said testimony, as within the parameters of the complaint, was proper.
The defendant's claim that the court erred in precluding evidence of control by a tenant, Robert Testo, of the parking area is without merit. Throughout the litigation defendant was consistent in his claim that the third party defendant Albert Testo was in control of the parking area and was "negligent in his failure to maintain the parking lot premises in a reasonably safe condition." (Third Party Complaint) To allow defendant to pursue an inconsistent theory as to control or liability without prior notice to the plaintiff would have been improper.
The court will not specifically address further claims of the defendant in its motion as it appears to the court that it has dealt sufficiently with defendant's shotgun approach. Furthermore, the court is comfortable with its rulings with respect to defendant's remaining claims. The court will, however, address the defendant's arguments in her Motion for Remittitur.
When ruling on a claim by a defendant that the verdict was excessive, the court is required to view the evidence in the light most favorable to sustaining the jury's verdict. The test enunciated over time is whether the award falls somewhere within the necessarily uncertain limits of just fair and reasonable CT Page 13601 damages, or whether the amount of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.
The plaintiff has a life expectancy of forty years. According to his physicians, the plaintiff sustained multiple fractures of his legs and required surgery consisting of internal reduction with fixation of bone graft and screws. In addition, Dr. Dworken testified that it was reasonably probable that plaintiff would require either ankle fusion or ankle replacement in the future because of ongoing arthritic degeneration of the ankle joint in the area of the fracture. In addition, Dr. Dworken testified that the plaintiff now evidences weakness of the left quadriceps muscle resulting from extended disuse of the leg and diagnosing a disuse atrophy of this muscle.
The jury could have found that the plaintiff sustained a permanent partial disability of 20 percent of the left ankle and 15 percent of the right leg from the knee downward. The plaintiff testified that he continues to have "trouble walking, has a limp and must soak his left foot in ice at the end of each working day. His work is that of a landscaper and he is required to be on his feet throughout the work day. Plaintiff did not claim lost earnings in his complaint as his fall occurred in January and he normally did not work during the winter months. He was confined to his home for five weeks and on crutches for three months subsequent to injury of each leg. Finally, the plaintiff testified that he constructed a support for his casted leg on the tractor he used. This enabled him to return to his landscape work in the spring of 1993 and ride the tractor with his left leg in full extension.
The evidence was clear that the plaintiff's work required that he spend his work day predominately on his feet. In view of the injuries to his legs and the permanent partial disabilities attributed by his treating health care providers, the court cannot conclude that the jury's verdict "shocks the conscious" or offends the court's "sense of justice." On the contrary, the court concludes that the jury verdict in this case "falls somewhere within the uncertain limits of just, fair and reasonable damages."
Therefore the motion to set aside the verdict filed by the defendant Esther Molin is denied. CT Page 13602
The Motion for Remittitur of the defendant Esther Molin is denied.
SKOLNICK, J.