MAYRON'S BAKE SHOPS, INC. *v.* ARROW STORES, INC.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued November 9—decided December 19, 1961

*Arnold C. Greenberg,* with whom were *Jacob Bresnerkoff* and *Jay E. Yaffo,* for the plaintiff in error.

*Irving S. Ribicoff,* with whom was *I. Milton Widem,* for the defendant in error.

ALCORN, J. This is a writ of error brought to reverse a judgment in favor of the defendant in error rendered by the Town Court of West Hartford in an action of summary process.[1] The instrument involved is entitled a "Lease and Agreement" and

---

[1] A motion to dismiss on the ground that the writ did not lie directly to this court was denied on May 2, 1961.

was executed on May 12, 1955, between Saxony Bake Shop-Delicacies, Inc., a Connecticut corporation, and Mayron Keizerstein. The corporation was the lessee of a building in West Hartford in which it conducted a delicatessen and retail bakery business. Under the instrument in issue, it sold its bakery business to Keizerstein and sublet space in a store in the building to him. In December, 1955, it sold its delicatessen business to the defendant in error and assigned its interest in the lease and agreement to the latter. Keizerstein, however, continued his tenancy until May 6, 1959, when he assigned his rights under the lease and agreement to the plaintiff in error, which had been organized about May 1, 1959. The relationship of tenant and landlord has existed between the parties to the present proceeding since May 6, 1959. The plaintiff in error will be referred to as the tenant and the defendant in error will be referred to as the landlord.

The issues are presented on a record notable for its departure from established procedure, due partly to the fact that the judgment was rendered on December 30, 1960, on the eve of the extinction of the Town Court. See General Statutes §§ 51-127—51-138, repealed, Public Acts 1959, No. 28, § 204; §§ 51-273, 51-274. Under a writ of error, the correctness of a judgment is to be tested by the facts stated in the bill of exceptions. *Cohn* v. *Fennelly,* 138 Conn. 474, 475, 86 A.2d 183; *Fleming* v. *Moran,* 136 Conn. 274, 276, 71 A.2d 96; *Kovner* v. *Dubin,* 104 Conn. 112, 117, 132 A. 473; Maltbie, Conn. App. Proc. § 241. In the present case, the parties have, following the filing of a bill of exceptions and an amended bill of exceptions, printed a transcript of the evidence as part of the record pursuant to a stipulation and filed appendices to their briefs through which they

invite our consideration of the evidence. The transcript and appendices have no proper place in the record under our practice because there is no procedure for correcting a bill of exceptions, as there is in the case of a finding. Maltbie, op. cit., p. 303. The fact that, under the particular circumstances involved, we consider this case as the parties have collaborated in presenting it is not to be construed as sanctioning a departure from established procedure.

From the record before us, it appears that the lease and agreement called for an annual rental of $2500 payable in equal instalments of $208.34, payment to be made on the first day of each month, with a ten-day grace period. Under another provision, the tenant agreed to pay, in addition to the rent, a designated percentage of specified utility and other charges within five days after the landlord had paid them and had furnished the tenant with evidence of such payment. Still another clause recited in part that "[i]n the event that any dispute shall arise hereunder or in relation to matters of payment or any matter or thing contained in this Agreement or in the rights or obligations of the parties hereto, such dispute shall be referred to arbitration in the following manner: Each party shall appoint an arbitrator. The arbitrators so appointed shall thereupon elect a third arbitrator." Then follows a description of the arbitration procedure.

On May 1, 1959, the present counsel for the landlord, writing as attorney for Saxony Bake Shop-Delicacies, Inc., sent a letter to Mayron Keizerstein in care of the present counsel for the tenant. The letter, referring to the lease and agreement, stated in part: "This is to advise you that late payments

of rent will no longer be accepted." Saxony Bake Shop-Delicacies, Inc., had, however, ceased to be the lessor more than three years before. Counsel for the tenant nevertheless, on May 5, 1959, replied to the letter, stating in part that he had shown it to "my clients" and that "in the future, monthly rentals as specified in . . . [the] agreement will be made." The letters of necessity concerned alleged late payments by Keizerstein and not by the present tenant. The circumstances involved appear in the record but are immaterial to the issues before us, because on May 6, 1959, Keizerstein assigned his interest in the lease and agreement to the tenant, of which he is the president. Thereafter, until July 1, 1960, the tenant made its rental payments on or before the tenth of each month with but two exceptions.

On August 12, 1960, Keizerstein, representing the tenant, visited the landlord for the first time that month to pay the August rent. Samuel Cohen, the landlord's president, met him and refused to accept the rent for that month, although he was satisfied that the tenant was able to pay it. Keizerstein thereupon left without paying the rent. On August 15, the landlord issued and served on the tenant a notice to quit the premises on or before August 20, because of nonpayment of the August rent. Thereafter, by process dated September 16, 1960, the landlord brought the action in which the judgment forming the subject matter of this writ of error was rendered. The file discloses that the tenant made answer and special defense to the summary process complaint on October 5, 1960, and on October 6 moved to stay proceedings until arbitration was had. The court denied the motion on October 21, and thereafter the action proceeded to trial and

judgment. The record discloses no effort by the tenant to seek arbitration other than the motion alluded to.

The denial of the motion for a stay presents one of the issues raised by the writ of error. During the four weeks which intervened between the service of the notice to quit and the commencement of the summary process action, and during the additional period of three weeks between the start of the action and the filing of an answer, the tenant had only to designate an arbitrator in order to set the arbitration procedure under the agreement in motion. The tenant took no such action during the entire seven weeks. Nor did the tenant, once the summary process action was begun, attempt to treat it as indicating a neglect or refusal on the part of the landlord to proceed with arbitration entitling the tenant to relief under § 52-410 of the General Statutes. The conduct of the tenant gave no assurance that it would resort to arbitration if the motion was granted or that the motion was other than a delaying action. An arbitration clause may be waived by one entitled to its benefit. *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 11, 110 A.2d 464. Summary process is a special statutory procedure designed to provide an expeditious remedy. *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 530, 41 A.2d 109; *Marsh* v. *Burhans,* 79 Conn. 306, 308, 64 A. 739. The denial of the motion for a stay was proper.

The remaining issue is the correctness of the judgment that the landlord recover possession of the premises. Much of the argument on both sides concerns conflicting claims as to whether the conduct of the parties amounted to a waiver of the precise requirement of the rent clause. Some of this relates to the period prior to the tenant's en-

trance on the scene. In our view of the case, much of this argument becomes unimportant, since we concern ourselves with the period from May 6, 1959, to August 12, 1960, when these parties were in a landlord and tenant relationship. Until July 1, 1960, the tenant paid its rent within the first ten days of each month with but two exceptions. The circumstances surrounding the August, 1960, payment are made undeniably clear by Cohen, the landlord's president and general manager. When asked on direct examination what occurred on August 12, 1960, he testified: "Mr. Keizerstein came over to pay his rent. . . . He came to pay his rent and I walked into the office with him as I usually did, and I told him that I would not accept this rent this month, and to see my attorney." Cohen further stated that Keizerstein offered to give him a check and that he had no question of Keizerstein's ability to pay. Cohen was not disturbed about the rent, but he wanted the tenant out. Several times he reiterated that the rent had been offered and he had refused to accept it. In this he did not differ from the tenant's claim. The unequivocal and emphatic form of this undisputed testimony about facts peculiarly within Cohen's knowledge amounted to a judicial admission from which the conclusion is inescapable that the landlord refused to accept payment of the rent from the tenant. *Casale* v. *Casale,* 138 Conn. 490, 493, 86 A.2d 568; *King* v. *Spencer,* 115 Conn. 201, 204, 161 A. 103; *Kanopka* v. *Kanopka,* 113 Conn. 30, 39, 154 A. 144.

No issue is made in this case of the fact that payment was to be made by check rather than in cash. A tender is an offer to pay a debt or discharge a duty, and, in the case of a debt, the offer to pay involves, as a general rule, the actual production of

the money and the placing of it in the power of the person entitled to receive it. *Sands* v. *Lyon,* 18 Conn. 18, 25. The formal production of the amount to be tendered is excused, however, by an unequivocal declaration that it will not be received. *Ashburn* v. *Poulter,* 35 Conn. 553, 556; *Sands* v. *Lyon,* supra; see *Buonocore* v. *De Feo,* 76 Conn. 705, 56 A. 510. The landlord correctly concedes that the nonpayment of the rent did not, in itself, terminate the lease but gave the landlord the option to terminate the lease by some unequivocal act clearly showing the exercise of that option. *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720. The landlord further correctly concedes that a tender after a breach of the covenant of payment but before a declaration of forfeiture by some unequivocal act by the landlord precludes the landlord from thereafter completing a forfeiture of the lease. *Kovner* v. *Dubin,* 104 Conn. 112, 118, 120, 132 A. 473. The service of the notice to quit on August 15, 1960, was the landlord's first unequivocal act notifying the tenant of the termination of the lease. Although the tenant's attempt to pay the rent was not made until after the expiration of the ten-day grace period, it did precede the landlord's exercise of its option to terminate the lease. The landlord's refusal to receive the rent excused the tenant from an actual production of the amount due and barred the landlord's right to claim a forfeiture on the basis of nonpayment of rent. It follows that the judgment for the landlord to recover possession was erroneous. Since it is essential that the landlord prove, in order to prevail, that there had been no tender or its legal equivalent before the declaration of a forfeiture, it is clear from Cohen's admission, alluded to above, that a new trial would avail

nothing and consequently should not be granted. *Gilbert* v. *Walker,* 64 Conn. 390, 397, 30 A. 132.

The Circuit Court is the successor tribunal to the Town Court of West Hartford and therefore has jurisdiction of any further proceedings in this case. General Statutes §§ 51-273, 51-274.

There is error, the judgment is set aside and the case is remanded to the Circuit Court in the sixteenth circuit with direction to render judgment for the plaintiff in error.

In this opinion the other judges concurred.