## NADJI TEHRANI ET AL. *v.* CENTURY MEDICAL CENTER, P.C.
## (4177)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 8—decision released May 6, 1986

*Andrew P. Nemiroff,* with whom, on the brief, was *James R. Fogarty,* for the appellants (plaintiffs).

*Judith Rosenberg,* for the appellee (defendant).

BIELUCH, J. The plaintiffs, Nadji Tehrani and Julliette S. Tehrani, have appealed from a judgment for the defendant in their summary process action. They claim that the court erred in concluding that the statutory notice to quit possession for nonpayment of rent was not adequate under the law or timely served. We find no error.

The facts were stipulated to at trial and are not in dispute. The plaintiffs leased commercial premises at 17 Park Street, Norwalk, to the defendant for professional purposes for five years commencing on September 1, 1979, and ending on August 31, 1984. Paragraph twenty-nine of the lease provided the defendant with an option to renew the lease for an additional term of three years at a new rental. Written notice of its intention to exercise this option of renewal was to be given to the plaintiffs by the defendant on or before March 1, 1984. Paragraph seventeen of the lease provided that "[a]ll notices and demands, legal or otherwise, incidental to this Lease or the occupation of the demised premises, shall be in writing, [and] mailed postage prepaid, certified or registered mail, return receipt requested" to the plaintiffs or defendant at the address of the leased premises.

Contrary to the provision for restricted delivery of written notice, on July 5, 1983, the plaintiffs, by ordinary mail, requested that the defendant advise whether it intended to exercise the option to renew the lease. The defendant responded in similar fashion by regular mail on July 8, 1983, advising the plaintiffs that "[p]ursuant to your request and paragraph 29 of that certain lease by and between Nadji Tehrani and Julliette S. Tehrani and Century Women's Medical Center, Inc., we hereby exercise our option to hire said premises for an additional term of 3 years, commencing on the expiration of the original term of this lease." The plaintiffs received this letter within a few days of its mailing.

In September, 1984, the defendant, then believing the lease renewal to be in effect, awaited notice of the new rental which was to be computed by the plaintiffs pursuant to a formula specified in paragraph twenty-nine of the lease. On September 26, 1984, the defendant tendered rent for the month of September in the

amount of $2779 in certified funds. This amount reflected the rent which was due prior to the renewal, and was tendered because the plaintiffs did not notify the defendant of any change in the monthly rent. This tender of rent was rejected by the plaintiffs. Thereafter, on October 10, 1984, the plaintiffs served the defendant with a notice to quit possession of the premises on or before October 21, 1984. There were two grounds specified in the notice for eviction: (1) the lease of August 14, 1979, as amended, "terminated by lapse of time due to your failure to exercise the option to renew said lease"; and (2) "[e]ven if said option to renew had been properly exercised (which it was not), said lease, as amended, terminated due to your failure to pay the rent which would have been due for the month of September, 1984." The summary process suit that followed sought the eviction of the defendant on two counts. The first count was based on the expiration of the lease by lapse of time for failure to renew. It alleged in paragraph ten that "[o]n October 10 and 11, 1984, the Plaintiffs caused a notice to be duly served on the Defendant to quit possession of the leased premises on or before October 21, 1984, as required by law, a copy of which notice is attached hereto and incorporated by reference herein as Exhibit C." The second or "alternate" count was predicated on the defendant's failure to pay rent for the month of September, 1984. The service of the notice to quit possession was repeated in paragraph eleven of this count. As a special defense to both counts, the defendant alleged the tender of rent and its rejection before the service upon it of the notice to quit possession. In their reply, the plaintiffs admitted that they "rejected a tender of compensation characterized by the Defendant as rent."

After trial, the court concluded "that the plaintiffs are pursuing two contradictory actions in their attempt to evict the tenant," and rendered judgment for the defendant on both counts. The first count alleging the

termination of the lease by lapse of time rested upon the defendant's failure to give notice of the exercise of its option to renew by "certified or registered mail, return receipt requested," as specified in paragraph seventeen of the lease. Even the receipt of notice by regular mail, the plaintiffs claimed, was not sufficient compliance with the requirement of notice. With regard to this claim, the trial court concluded that if the lease was not renewed, the tenancy then became a month to month rental under the provisions of General Statutes § 47a-3b, and the tenant was allowed to occupy the premises for the entire month beginning on October 1, 1984. In that case, the notice to quit possession served upon the defendant was defective because it did not allow possession through the month of October before the commencement of eviction proceedings. The notice to quit demanded surrender of the leased premises on or before October 21, 1984, and eviction proceedings were initiated on the following day. On the other hand, the court also concluded that if the renewal of the lease was effective, then the statutory notice to quit possession on the ground of termination of the lease by lapse of time was also defective and invalid since the lease would allow continued occupancy without interruption. Therefore, the court concluded that, in either event, the notice to quit possession of the premises was defective as to the first ground alleged, namely, that the lease had terminated by lapse of time for failure of renewal under its terms.

Turning to the eviction for alleged nonpayment of rent for the month of September, 1984, the trial court concluded that this action was legally defective and invalid for two reasons. First, the defendant's tender of rent on September 26, 1984, prior to service on the defendant of the notice to quit possession on the tenth day of the following month, precluded eviction on the ground of nonpayment of rent. The nonpayment of rent

does not, in itself, terminate the lease but gives the landlord the option to terminate the lease by some unequivocal act clearly showing the exercise of that option. A tender of rent after a breach of the covenant for its payment, but before a declaration of forfeiture by some unequivocal act by the landlord, precludes the landlord from thereafter completing a forfeiture of the lease. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961). The service of the notice to quit possession on October 10, 1984, was the plaintiffs' first unequivocal act notifying the defendant of the termination of the lease for nonpayment of the September rent. Although the defendant's attempt to pay the rent was not made until after the expiration of the statutory ten day grace period,[1] it did precede the plaintiffs' exercise of their option to terminate the lease. The plaintiffs' refusal to accept the tender of rent excused the defendant from further production of the amount then due and barred the plaintiffs' right to claim a forfeiture of the tenancy on the basis of nonpayment of rent and to institute an eviction action on that ground. Id.

The trial court's second reason for denying eviction for nonpayment of rent was that the action was not timely. As the court simply stated: "[W]here the tenancy is oral month to month, then the Notice to Quit must be served in the month in which the rent is alleged to be unpaid. In this case, the rent was alleged to be unpaid in September and the Notice to Quit was served in October. Again, the notice would be invalid for this reason." This is so for the reason that in a month to month tenancy, a new rental agreement commences on the first of each month. See General Statutes § 47a-3b.

---

[1] General Statutes § 47a-15a provides: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive [for summary process]."

The plaintiffs' principal argument on appeal is that the trial court's reliance upon defects in the notice to quit is misplaced since an amendment to the lease between the parties, executed on July 15, 1980, provided that "[t]he parties hereby expressly waive their rights to a notice to quit, pursuant to Connecticut General Statutes § 47a-25."[2] Thus, they claim, they were not obliged to issue a notice to quit possession for either ground of eviction. The fallacy in this argument is that the plaintiffs did issue a notice to quit possession for termination of the lease by lapse of time and by nonpayment of rent. Each of the two counts of the summary process writ alleges that it is based upon the service of a notice to quit possession of the leased premises "as required by law."

While the record before us demonstrates that such an amendment, including a waiver of notice to quit possession, did exist, the trial court's memorandum of decision makes no reference to the plaintiffs' reliance at trial upon a claim of waiver of notice to quit possession and the plaintiffs have not provided us with a transcript demonstrating that the issue of waiver of such notice was raised at trial. Indeed, the plaintiffs never alleged in their complaint that the written notice to quit possession of premises required by General Statutes § 47a-23 had been waived. Rather, they relied upon the allegation that "[o]n October 10 and 11, 1984, the Plaintiffs caused a notice to be duly served on the Defend-

---

[2] By Public Acts 1980, No. 80-399, § 2, effective October 1, 1980, General Statutes § 47a-25 was amended to permit the express waiver in a written lease of the statutory notice to quit possession only "in the event such lease terminates by lapse of time." That statute, as it read earlier, when the waiver was executed in the present case, did not expressly limit itself to terminations of leases by lapse of time. That version of the statute has been so construed, however. *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 629–30, 495 A.2d 1127 (1985). Thus, in the present case, any claim that there was a waiver of the notice to quit would not affect the requirement that a notice to quit possession issue where nonpayment of rent was the ground for terminating the lease. Id.

ant to quit possession of the leased premises on or before October 21, 1984, as required by law, a copy of which notice is attached hereto and incorporated by reference herein as Exhibit C." Further, the parties' stipulation of facts on which this case was tried makes no reference to the claimed waiver. It relies solely upon the alleged notice to quit possession found defective by the trial court. Under these circumstances, the court was correct in basing its decision upon the defects in the alleged notice to quit possession of the premises upon which the summary process action was founded.

General Statutes § 47a-23 sets forth the requirement that a notice to quit possession must issue to the tenant at least eight days before the termination of the rental agreement or lease, upon the expiration of which a complaint may issue under General Statutes § 47a-23a seeking eviction of the tenant and immediate possession. Eviction is a statutory action and requires that the complaint allege the necessary notice to the tenant. Practice Book § 185 provides that whenever in a statutory action the giving of a notice is required by the statute, the plaintiff "shall either recite the same in his complaint or annex a copy thereto." See Practice Book Forms 704.10, 704.11; Stephenson, Conn. Civ. Proc. § 97 (c). The plaintiffs' complaint is in full compliance with these statutory and procedural requirements; the underlying notice to quit possession, however, does not meet the statutory demands.

Similarly, we conclude that where the plaintiffs seek to rely on an express waiver of the statutory notice to quit possession permitted by General Statutes § 47a-25, they must allege the existence of such a waiver. This they have not done.

In order to recover pursuant to a statute, strict compliance with the terms of the statute must be alleged. *Scoville* v. *Columbia,* 86 Conn. 568, 570–71, 86 A. 85

(1913). This rule applies particularly to summary process actions precisely because of the summary nature of the proceedings and remedy involved. *Sandrew* v. *Pequot Drug, Inc.,* 4 Conn. App. 627, 631, 495 A.2d 1127 (1985). Thus, in order to recover possession of the premises in this case, the plaintiffs were obligated to allege that they complied with the notice requirement of § 47a-23, or, in the alternative, that there was a valid waiver of the statutory notice pursuant to § 47a-25. Having failed to allege a waiver of the notice to quit possession, but instead proceeding upon their allegations that they served upon the defendant a valid notice to quit possession "as required by law," the plaintiffs were obligated to prove, and they were limited to, their allegations that they complied with the statutory notice requirement, and they were barred from proceeding on a theory of waiver, which they did not allege.

"The principle that a plaintiff may rely only upon what he has alleged is basic. . . . 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint.' " (Citations omitted.) *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983). "What is in issue is determined by the pleadings and these must be in writing." *Telesco* v. *Telesco,* 187 Conn. 715, 720, 447 A.2d 752 (1982). Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein. *Arey* v. *Warden,* 187 Conn. 324, 332, 445 A.2d 916 (1982). The plaintiffs' arguments before us regarding waiver were not relevant to the issues as they were framed in the pleadings and presented to the trial court. A judgment upon an issue not pleaded would not merely be erroneous, but it would be void. See *Telesco* v. *Telesco,* supra.

While the discussion above is dispositive of this case, we also note an additional ground supporting the trial court's decision. As stipulated by the parties, the plain-

tiffs sought and received by ordinary mail the defendant's declaration of intent to renew its lease. Further, the plaintiffs, when they inquired as to the defendant's future occupancy "RE: *RENEWAL & EXTENSION OF YOUR LEASE*" through the medium of ordinary mail, stated they were "[l]ooking forward to hearing from you," thereby implicitly inviting the defendant to respond through the same medium. (Emphasis in original.)

Unlike the situation which was presented to us in *Seven Fifty Main Street Associates* v. *Spector,* 5 Conn. App. 170, 497 A.2d 96 (1985), the plaintiffs here have acknowledged that they actually received the defendant's notice of renewal. Additionally, in *Seven Fifty Main Street Associates,* the landlord requested no prior declaration of intent to renew and expressed no implicit permission to the defendant to notify the plaintiff of an intent to renew his lease by ordinary mail. Under the circumstances of the present case, we hold that there was a valid renewal of the defendant's lease.

There is no error.

In this opinion the other judges concurred.