[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Milford Savings Bank, has brought this action seeking to foreclose a mortgage on property located on Oronoque Road in the City of Milford and owned by the defendants, William G. Barbieri and Gennaro A. Barbieri. The mortgage was given as collateral to secure a note in the principal amount of $750,000, executed by the defendants herein.
At the time of its acquisition on October 27, 1987, the property consisted of raw land. It was the intention of the defendants to obtain subdivision approval of the land and thereafter to sell the individual lots. The property was purchased for $425,000. The defendants borrowed 400,000 toward the purchase of same. An appraisal at the time indicated a value of $431,000. It was not their initial intention to construct houses or any of the lots. Subdivision approval was obtained on May 3, 1988 and, thereafter, on August 5, 1988, a construction loan in the principal amount of $750,000 was obtained from the plaintiff. The loan was to be dispensed in phases as the necessary work progressed. The original payout was in the amount of $500,000, of which $400,000 went to pay off the initial mortgage associated with the purchase of the land. An additional $75,000 was requested by the defendants on December 14, 1988. The loan fell into arrears on July 1, 1989.
The defendants' initial plan was to subdivide the property into seven lots, install roads, sewers, and the necessary utilities and then to sell all seven lots. On July 1, 1989, the loan became delinquent. At that time, the defendants met with an official of CT Page 8683 the plaintiff Bank to see what could be done. The defendants contend that they orally offered to convey the property to the Bank. Paul Austin, an Executive Vice President, the bank official with whom they conferred, testified that at that meeting the parties discussed the various options available to the defendants. Austin claims that the options discussed were a tender of the property in lieu of foreclosure, a foreclosure of the property, or the Barbieris building houses on the site. The Barbieris elected to build homes.
In order for them to do so, the plaintiff Bank required them to bring the loan current and they, in return, agreed to a modification of the mortgage agreement extending the maturity date of the note for one year to August 15, 1991. It was necessary for the defendant Gennaro Barbieri to obtain a home equity line of credit to enable the Barbieris to pay the interest due on the loan. The note was made current by the interest payment of $28,000 on September 28, 1990. Earlier, on September 7, 1990, the Bank received an appraisal from Curtis Freda, a licensed appraiser, which reflected a fair market value of $430,000. The debt at that time was approximately $593,000. The defendants were not made aware of the Freda appraisal. It should be noted, however, that the defendants Barbieri were certified public accountants and that Gennaro Barbieri listed himself as a developer on his federal tax return.
The defendants commenced the building of a house on Lot #4 and made the appropriate interest payments on the loan. Delays ensued in the construction on Lot #4 and it became evident that a further modification of the loan agreement would be necessary. The maturity date was extended to August 5, 1992. Lot #4 was sold on January 27, 1992 for $125,000, which sum was applied in part to both principal and interest. The last modification of the loan extended the maturity date to March 1, 1993.
The interest due March 1, 1993 was not paid, making the loan delinquent. On March 18, 1993, a Notice of Foreclosure and Demand For Payment was made by the plaintiff. The defendants responded by letter dated April 23, 1993 to the Bank's demand that they had received two offers on Lots #5 for $175,000 and the other on the remaining three lots for $129,000. They also indicated their awareness of a shortfall and requested additional time to make a mutually satisfactory proposal. The foreclosure action was commenced on June 1, 1993. CT Page 8684
The defendants, in their Answer, admit that they executed the promissory note in the original amount of $750,000 and that they gave the plaintiff a mortgage on the subject property to secure the note. Furthermore, they admit that the loan is in default and that demand for payment has been made. While the plaintiff has sustained his burden of proof as to the complaint, the defendant has raised several defenses to the complaint.
By way of special defenses, the defendants claim that the plaintiff has acted with unclean hands, inducing the defendants to borrow additional funds, increasing their liability and thereby breaching an implied covenant of good faith and fair dealing. They also contend the Bank refused a tender of the property when the debt was substantially less, thereby increasing the indebtedness; that they are also guilty of laches by failing to take timely steps and allowing the debt to increase; that by refusing a tender of the property, as of that date there should be a cut-off for any subsequent claims for damages; that by exercising control and directions over the defendants their relationship changed to that of a partnership; that by refusing the tender offer and loaning additional funds, all claims were waived as to any foreclosure; that even though there was no equity in the property, the Bank, by loaning additional funds, did so in an effort to avoid having the loan classified as nonperforming, thereby committing a fraud.
The defendants have also filed a counterclaim, alleging in the first count that the plaintiff refused to accept a deed in lieu of foreclosure when there would not have been any deficiency and instead loaned additional funds, thereby increasing the indebtedness. In the second count of the counterclaim, the defendant claims the actions of the plaintiff constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA), §§ 42-110a to 42-110q of the Connecticut General Statutes.
In the First Special Defense, the defendants invoke the doctrine of unclean hands, alleging that the plaintiff induced the defendants to borrow additional funds when the loan was in default, thereby increasing their indebtedness; that the plaintiff breached the implied covenant of good faith and fair dealing, inducing the defendants to borrow additional funds, increasing their indebtedness; and that they refused a tender of the property when the debt was substantially less, thus increasing their exposure.
"Application of the doctrine of unclean hands rests within the sound discretion of the trial court." A B Auto Salvage, Inc. v.CT Page 8685Zoning Board of Appeals, 189 Conn. 573, 578; Decicco v. Beach,174 Conn. 29, 35, 381 A.2d 543 (1977). "The party seeking to invoke the cleans hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys a broad discretion in determining whether the promotion of public policy and the preservation of the court's integrity dictate that the clean hands doctrine be invoked. . . ." (Internal citations omitted.) Polverariv. Platt, 29 Conn. App. 191, 262. "The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not byway of punishment but on considerations that make for the advancement of right and justice." Kulwacz v. New York Life Ins. Co., 39 Conn. Sup. 470,476.
In order to invoke the doctrine of unclean hands there must be wilful misconduct on the part of the party against whom the doctrine is being invoked. The burden of proof relating to any affirmative defense rests upon the person asserting the defense, in this instance, the defendants herein. The evidence at trial indicates that when the note became delinquent demand was made by the plaintiff. Subsequently, a meeting was held between the Bank's Mr. Austin and the two defendants. At that meeting, various options were discussed: (1) that the defendants could abandon the project and allow the plaintiff to proceed with a foreclosure; (2) that they might tender the property to the Bank in lieu of foreclosure. This option, however, would entail a deficiency. The third option was to build on one of the lots. The defendant chose to proceed along the route of the latter option, choosing to build on Lot #4. The Bank required, however, that the loan be brought current, which brought about the home equity loan to Gennaro Barbieri. The court finds no act of wilful misconduct on the part of the plaintiff that might invoke the clean hands doctrine nor is there any indication of a lack of good faith and fair dealing by the plaintiff. The defendants are CPAs and Gennaro Barbieri lists himself as a developer. Both defendants are well schooled in the business world and were fully aware of the market conditions existing at the time and fully knowledgeable of the risks involved. While the option of a tender might have been discussed, there is no evidence of any specific offer nor the presentation of any deed to the plaintiff.
As for the special defense of laches, defendants claim that the plaintiff is barred of any recovery because of plaintiff's inaction and failure to take timely steps to enforce the collection CT Page 8686 of the note, thereby increasing the amount due and owing.
"`Laches consists of an inexcusable delay which prejudices the defendant.'. . . We have said on other occasions that `[t]he defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit.'. . . `Delay along is not sufficient to bar a right'; the delay in bringing suit must be `unduly' prejudicial. . . . The burden is on the party alleging laches to establish that defense." (Internal citations omitted.) Cummings v. Tripp, 204 Conn. 67, 88. The court finds no evidence of any unreasonable, inexcusable, or prejudicial delay on the part of the plaintiff Bank. To the contrary, the evidence discloses that on every occasion that the loan became delinquent the Bank made demand upon the defendants. Furthermore, the evidence discloses that on every such occasion the Bank cooperated with defendants in any work-out effort as indicated by the several extensions of the maturity date of the loan. There is no basis under the doctrine of laches for barring the plaintiff from bringing this foreclosure action.
The defendants allege in their Third Special Defense that their tender of the property was refused and, therefore, plaintiff's claims for damages must be cut off as of that date. The evidence presented during the trial indicates that, while the option of a tender may have been discussed between the parties, no formal tender of a deed to the property was ever made. To the contrary, the evidence was that the defendants opted to erect houses upon the various lots and thereafter sell them in an effort to cut their losses.
In the case of Bank of Boston Connecticut v. Platz,41 Conn. Sup. 587, 589-90, wherein a deed was actually tendered and subsequently refused, the court held that "[t]he general rule is that both payment of and tender of payment of the debt must be in money, unless the parties agree otherwise, or the obligee consents to accept some other medium of payment. 60 Am.Jur.2d, Payment Sec. 52. In Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,149 Conn. 149, 155-56, 176 A.2d 574 (1961), the Supreme Court defined tender as `an offer to pay a debt . . . [and] the offer to pay involves as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it.'" . . .
This rule applies to mortgage debts. "A debtor has no right to deed the property securing a debt to the creditor in settlement CT Page 8687 of the debt where the contract provides for payment in money." (Citations omitted.)
In the matter before the court there was never any formal tender by the defendants and, if there were, it would have been the prerogative of the plaintiff to refuse the offer.
"The defendants, however, are not without a remedy. If they wish to stop the running of interest and to reduce attorney's fees, they can stipulate to a judgment of foreclosure." Bank of BostonConnecticut, supra, 592.
Defendants' Fourth Special Defense allege a change in the relationship of the parties from a debtor-creditor relationship to a partnership of the parties. Other than the mere claim of such, the evidence shows that at all times the Bank maintained a creditor relationship. They displayed a continuing concern over the negative posture of the loan. Other than their interest in the repayment of the loan, there is no evidence of the Bank directing the defendants in any of the decisions to be made. The evidence does, however, disclose a concern and interest by the Bank relating to a work-out of the loan so as to reduce the deficiency which both parties realized existed.
The defendants' Fourth Special Defense alleging a change from debtor-creditor relationship to that of a partnership between the parties is without merit. There has been no evidence offered which would show that the Bank exercised any control over the project. The evidence did indicate a concern by the Bank for the repayment of its loan. The decision to erect houses on the lots was that of the defendants. The Bank did agree to several modifications of the mortgage agreement extending the maturity date of the loan to give the defendants an opportunity to work out or reduce the indebtedness.
The defendants' Fifth Special Defense rests upon a claim that the plaintiff, by refusing the tender offer, waived its right to a foreclosure of the mortgaged property. "A debtor has no right to deed the property securing a debt to the creditor in settlement of the debt where the contract provides for the payment in money." See Bank of Boston Connecticut, supra. In order for the Bank to have waived its right to a foreclosure, there would have to be an intentional relinquishment of that right on their part. Such relinquishment may be implied if the circumstances deem reasonable to do so. Loda v. H. K. Sargent Associates, Inc., CT Page 8688188 Conn. 69. The conduct of both parties is relevant in determining whether there has been a waiver. Hartford Assurance IndemnityCo. v. Chung, 37 Conn. Sup. 587. There has been no conduct express or implied wherein the Bank relinquished its right of foreclosure. To the contrary, there was a constant concern by the Bank over the delinquency of the loan from the date loan payments fell into arrears. There has been no waiver express or implied by the plaintiff Bank.
Finally, defendants' Sixth Special Defense alleges fraud in that the plaintiff loaned additional monies to complete the project when it knew there was no equity remaining and that these funds were loaned merely to prevent the loan from being classified as non-performing by the regulating authorities.
"`Fraud consists of deception practiced in order to induce another to part with property or surrender some legal right and which accomplishes the end designed.'. . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be untrue by its maker; (3) the statement was made with the intent of relying thereon; and (4) the other parties relied on the statement to his detriment. . . ." (Internal citations omitted.) Billington v.Billington, 220 Conn. 212, 217. The trial testimony evidenced no conduct on the part of the plaintiff which could be classified as a deception by the plaintiff fitting the definition of fraud. As for any deficiency, both parties were aware that a deficiency was eminent and all of the activities by both parties were directed at a loan work-out that would minimize the same. The defendants have failed to sustain their burden of proof as it relates to their Sixth Special Defense.
Counterclaim
The defendants have filed a counterclaim in two counts, the first count merely reciting all of the claims alleged in their six special defenses while the second count is based on violations of CUTPA.
Count One as indicated merely repeats all of the claims set forth in their six special defenses, all of which have been decided elsewhere in this Memorandum. Pursuant to its earlier findings, the court finds that the defendants have failed to sustain their burden of proof as to Count One of the counterclaim. CT Page 8689
As to the CUTPA claim (Count Two), "[i]n order to prevail in a cause of action under CUTPA the facts proved by the evidence must establish either `unfair methods of competition [or] unfair or deceptive acts or practices' which `have a potential effect on the general consuming public.'. . ." (Internal citations omitted.)McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567.
"The legislature of this state has directed that the `courts of this state shall be guided by interpretations given by the Federal Trade Commission and the Federal Courts. Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)', General Statutes § 42-110b(b). We followed this mandate recently and adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: `[w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or, otherwise — whether, in other words, it is within the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; whether it causes substantial injury to consumers [(competitors or other businessmen)]'. Conaway v. Prestia, supra, 492-93, quoting FTC v.Sperry Hutchison, 405 U.S. 233, 244-45, n. 4, 92 S.Ct. 898,31 L.Ed.2d 170 (1972); see footnote 10, supra". McLaughlin v.Ford, supra, 567-68.
The defendants have failed to meet their burden of proof as to their counterclaim Count Two. There has been no evidence that the conduct of the plaintiff comes within the purview of the so-called "cigarette rule". The defendants were unfortunate to have engaged in this development at a time when the real estate market took a precipitous fall, bringing about problems which they encountered. The plaintiff was concerned about its debt and, while they showed certain amount of sympathy for the defendants, they nevertheless found it necessary to make every reasonable effort to collect on the note in question. Judgment may enter for the plaintiff Bank on its complaint and on the counterclaim.
The debt is found to be $469,693.02.
The value of the property is found to be $93,000.
Attorney's fees are awarded in the amount of $5100.
A judgment of strict foreclosure will enter with the law days CT Page 8690 to commence October 31, 1994.
The Court
By Curran, J.