[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The complaint in this case alleges that the defendant Austin Nixon leased from the plaintiffs the premises in question by virtue of an oral, week-to-week lease, and that the rent was due each Monday in the amount of $85.00. It further alleges that the rent due on Monday, July 22, 1996, was not paid, that a notice to quit was served on July 27, 1996, and that the defendant has overstayed his quit date of August 3, 1996.
The defendant filed a number of special defenses, including payment of rent before the date he received the notice to quit and a number of housing or health code violations. A hearing in the matter was held on September 10, 1996. The defendant has not proved his defenses involving violations, as none of the violations cited in the inspection report were, in the opinion of the inspector, of a nature materially affecting health and safety, and there was little evidence suggesting that any of the violations, found during the inspection of August 21, 1996, were also existing at the time non-payment was alleged.[1] There was also evidence suggesting that the defendant was at least partly responsible for delay in addressing the concerns. CT Page 5316-KKKKK
It must be noted, however, that the only ground stated in the notice to quit and in the complaint was non-payment for the specific week of July 22. As there is a grace period of four days in the case of a week-to-week tenancy; see § 47a-15a of the General Statutes; the earliest that the notice to quit could be served for nonpayment of rent due July 22 was July 27. There is no question but that there was no rent paid prior to July 27, and the notice to quit was served on July 27.
The evidence in this case, however, is that some time prior
to the service of the notice to quit on July 27, the defendant CT Page 5317 had placed his rental payment of $85.00 outside his outer door, as was his custom. The defendant testified that a receipt for that amount was pushed under his door while he was in the room; shortly afterward, a copy of the notice to quit was placed under his door. The receipt was signed by the plaintiff Charles Saimond; the notice to quit was served by a sheriff. Neither the sheriff nor the plaintiff Charles Saimond testified; the facts necessary to prove the allegations of the complaint were established by the testimony of the plaintiff Joan Saimond. In the circumstances of this case, tender of rent was accomplished by leaving it in the customary place for pickup by the landlord; service of the notice to quit was apparently accomplished by ordinary abode service.
It is black-letter law that tender of rent prior to an unequivocal act of the landlord terminating the lease precludes the landlord from terminating the lease on the ground of nonpayment. Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,149 Conn. 149, 155-56 (1961); Madison Enterprises, Inc. v. Keppner,
H-554, SPH-8405-23527 (Housing Session 1984) (Aronson, J.). Although the plaintiff quite understandably marked "use and occupancy" on the receipt, there can be no interpretation on the evidence presented other than that the tender preceded service of the notice to quit.
Judgment must enter, then, in favor of the defendant.
Beach, J.