[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REVISED MEMORANDUM OF DECISION
This is a summary process action based on nonpayment of rent. In October 1996, the parties signed an agreement whereby the plaintiff agreed to lease an apartment to the defendant in exchange for certain promises and a monthly rent of $350.00. The agreement stated: "The term of this lease starts on Oct ____, 1996 and ends on __________________, 19__." Based on the evidence, the court therefore finds that subsequent to October 1996 there was a month-to-month lease, with an agreed upon rent of $350.00. The defendant took possession of the premises and still occupies them. The defendant failed to pay the rent for the months of January, February and March of 1997. On March 31, 1997, the plaintiff caused a notice to quit to be served on the defendant.[1] Although the time stated in the notice to vacate the premises has passed, the defendant still remains in possession.
The defendant interposes three defenses. First, the defendant alleges that she offered rent to the plaintiff before February 28, 1997. "A tender of rent after a breach of the covenant for its nonpayment, but before a declaration of forfeiture by some unequivocal act by the landlord, precludes the landlord from CT Page 2521 thereafter completing a forfeiture of the lease. Mayron's BakeShops, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 156,176 A.2d 574 (1961)." (Emphasis added.) Tehrani v. Century Medical Center,7 Conn. App. 301, 305, 508 A.2d 814 (1986). "A tender is an offer to pay a debt or discharge a duty, and, in the case of a debt, the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it." Mayron's Bake Shops, Inc. v.Arrow Stores, Inc., supra, 149 Conn. 155-156. The defendant's telling the plaintiff's agent that her mother was coming with money was not a tender of the rent.
The defendant's second defense is that no rent was due, pursuant to General Statutes § 47a-7 (a), because of certain local code violations.[2] See also General Statutes §§ 47a-4a,47a-12, 47a-13. Suffice it to say that the problems of which the defendant complains were repaired soon after they arose and long before the March rent was due. The defendant's claim that this action is a retaliatory eviction in violation of General Statutes § 47a-33[3] is not well taken since it is based on nonpayment of rent. Maretz v. Apuzzo, 34 Conn. Sup. 594, 597, 378 A.2d 1082
(App. Sess. 1977); see also Gayle v. Young, Superior Court, Judicial District of Fairfield, Housing Session, No. SPBR 9409-27973 (February 6, 1995).
The defendant's third defense requires the recitation of additional facts. The defendant obtained employment as a dishwasher, traysetter and potwasher with Oakcliff Convalescent Home (Oakcliff) in or around September 1996. Oakcliff and the plaintiff are both owned and operated by the same two principals. The defendant was offered an apartment owned by the plaintiff and agreed that Oakcliff could withhold $60.00 per week from her wages toward the payment of her rent. In December 1996, the defendant stopped coming to work. In February she returned with a letter from a physician stating that he had seen her that day "for follow up of right knee pain which is improving" and that she could return to work on March 5, 1997. She asked Raymond Cruess, a principal of both the plaintiff and of Oakcliff, if she could have her job back. Cruess told the plaintiff that he was not interested in her working at Oakcliff any longer.
In late March 1997, the defendant saw an attorney who prepared a notice of claim for worker's compensation, dated March 27, 1997, against Oakcliff. The notice stated that the date of injury was "on or about 12/31/96." That notice was served on CT Page 2522 Oakcliff by registered mail on March 28, 1997. The notice to quit in this case was signed and served on March 31, 1997.
The defendant claims that the plaintiff is seeking to evict her in retaliation for her filing a worker's compensation claim. Although this is not one of the statutory categories for a retaliatory eviction; see General Statutes § 47a-20[4]; the defense relates to the equitable jurisdiction of the court to enjoin the forfeiture of a tenancy. Fellows v. Martin,217 Conn. 57, 584 A.2d 458 (1991).
General Statutes § 31-290a(a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against anyemployee because the employee has filed a claim for worker's compensation benefits or otherwise exercised the rights afforded him pursuant to this chapter." (Emphasis added.) While the plaintiff was not the defendant's employer, the reality is that both the plaintiff and Oakcliff are close family corporations owned and controlled by the same two family members, Raymond Cruess and Patricia Cruess, who made the ultimate decisions on the defendant's tenancy and employment. More, while there is no claim that the defendant did not voluntarily agree to the withholding of a portion of her wages to pay a portion of her rent, the court infers from the evidence that Oakcliff encouraged her to do so for the benefit of the plaintiff. General Statutes § 31-290a(a) expresses the public policy of this state, and neither Oakcliff nor the plaintiff, in derogation of that statute, may "do indirectly what it could not do directly."Federal Deposit Insurance Corp. v. Peabody, N.E., Inc.,239 Conn. 93, 104, 680 A.2d 1321 (1996); see also Board of Education v.State Board of Labor Relations, 217 Conn. 110, 125, 128,584 A.2d 1172 (1991); Pepe v. New Britain, 203 Conn. 281, 293,524 A.2d 629 (1987); University of Connecticut Chapter, AAUP v. Governor,200 Conn. 386, 391, 512 A.2d 152 (1986); State v. Laselva,163 Conn. 229, 234, 303 A.2d 721 (1972); State v. Menillo,159 Conn. 264, 269, 268 A.2d 667 (1970); Scovill Mfg. Co. v. Commission onCivil Rights, 153 Conn. 170, 175, 215 A.2d 130 (1965); Wilson v.West Haven, 142 Conn. 646, 657, 116 A.2d 420 (1955); GreenwichTrust Co. v. Tyson, 129 Conn. 211, 220, 27 A.2d 166 (1942);Savings Bank of Ansonia v. Schancupp, 108 Conn. 588, 597,144 A. 36 (1928). Here, however, the defendant's claim founders for lack of proof.
"Our Supreme Court has set forth the allocation of burdens of CT Page 2523 proof and order of presentation of proof in discrimination cases brought pursuant to 31-290a in Ford v. Blue Cross Blue Shieldof Connecticut, Inc., 216 Conn. 40, 578 A.2d 1054 (1990). The [claimant] bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the [claimant] must present evidence that gives rise to an inference of unlawful discrimination. . . . If the [claimant] meets this initial burden, the burden then shifts to the [respondent] to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the [respondent] carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The [claimant] then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . . Ford v. Blue Cross Blue Shield of Connecticut,Inc., supra, 216 Conn. 53-54.
"Section 31-290a was designed to protect employees who file for workers' compensation benefits. Chiaia v. Pepperidge Farm,Inc., 24 Conn. App. 362, 365-66, 588 A.2d 652, cert. denied,219 Conn. 907, 593 A.2d 133 (1991). The burden shifting formula presented in Ford required the [defendant] here to establish a prima facie case under § 31-290a, i.e., she bore the initial burden of demonstrating discrimination by a preponderance of the evidence. Ford v. Blue Cross Blue Shield of Connecticut, Inc.,
supra, 216 Conn. 53. The [defendant] must present some evidence from which a trier of fact could infer that the [plaintiff] . . . discriminated against the [her] because [she] had exercised [her] rights under the Workers' Compensation Act. Id., 53-54. Without some proof of an improper motive, [the defendant's] case must fail. See id. Chiaia v. Pepperidge Farm, Inc., supra,24 Conn. App. 366." (Citations and internal quotation marks omitted.)Erisoty v. Merrow Machine Co., 34 Conn. App. 708, 710-711,708 A.2d 643, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994).
Here, the defendant has nominally presented a prima facie case: she was employed by Oakcliff; she filed a worker's compensation claim; thereafter, she was served with a notice to quit by the plaintiff. This may give rise to an inference of unlawful discrimination. Erisoty v. Merrow Machine Co., supra, CT Page 252434 Conn. App. 710; see Texas Department of Community Affairs v.Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207
(1981). However, not only was there persuasive evidence from her immediate supervisor and from Raymond Cruess that the defendant was not rehired because of chronic tardiness, failure to appear for work altogether, and a very poor attitude about her employment; moreover, there was undisputed evidence that she had not paid her rent for months when she was served with the notice to quit. Oakcliff's refusal to rehire the defendant and the plaintiff's serving her with a notice to quit were devoid of a discriminatory intent.[5] The presumption raised by the defendant's prima facie case has been rebutted and the defendant has not sustained her burden of persuasion.
Judgment of possession may enter for the plaintiff.
BY THE COURT
Bruce L. LevinJudge of the Superior Court