[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This is a summary process action brought for nonpayment of rent. The plaintiff, The Graduate Club Association (hereinafter "Landlord") has brought this action against the defendant, Carl Mendlow (hereinafter "Tenant") seeking possession of Room 9 at The Graduate Club, 155 Elm Street, New Haven, Connecticut.
A trial on this matter was conducted on May 23 and May 24, 2001. Based upon the evidence produced at trial together with the full record in this case, the court makes the following findings of fact and conclusions of law.
 Findings of Fact
1. On September 12, 2000, the Landlord and Tenant entered into an oral lease for the occupancy of Room 5 at the Graduate Club at a monthly fee of $560. At the request of the Tenant, the Landlord agreed to accept payment in weekly installments of $140.00 payable in each of the first four weeks of any month no later than Friday of each week.
2. On or about October 12, 2000, the oral lease was amended to change CT Page 6638 the room from Room 5 to Room 9 and the monthly fee was changed to $400.00 payable in weekly installments of $100.00 to be paid in each of the first four weeks of any monthly period no later than Friday of each week.
3. The Tenant took possession of Room 5 and later Room 9, and continues to possess Room 9 to the present.
4. The lease for Room 9 was for a term ending January 31, 2001.
5. On November 10, 2000, the Landlord served the Tenant with a Notice to Quit seeking possession or Room 9 based on lapse of time. The Tenant did not quit possession and the Landlord commenced a summary process action known as The Graduate Club Association v. Carl Mendlow, docket number SPNH 0011-6529 7NH (hereinafter referred to as the first summary process action). The Tenant moved to dismiss asserting that the parties had agreed to a lease term until the end of January 2001. On December 14, 2000, the court (Hadden, J.) granted the Tenant's motion to dismiss.
6. The Notice to Quit served on November 10, 2000 did not mention use and occupancy payments and no motion for use and occupancy payments was made in connection with the first summary process action. During the month of November, the Tenant tendered rent money to the Landlord that was refused based on the pendency of the first summary process action.
7. On December 14, 2000, after the dismissal of the first summary process action based on a finding that the lease term had not lapsed, the Landlord asserted its claim for all rent due — including the period from November 12, 2000 to December 12, 2000.
8. On December 22, 2000, the Tenant made a payment to the Landlord of $402.00. The Landlord applied this payment to rent due for the month of November 2000.
9. On January 2, 2001, the Landlord terminated the lease with the Tenant by serving a Notice to Quit. The Notice to Quit stated that any payments made by the Tenant after January 2, 2001 would be accepted for use and occupancy only.
10. On January 2, 2001, the Tenant was delinquent in rent having failed to pay rent for the weeks ending Friday, December 15, December 22, and December 29.
11. From sometime in September, 2000 to October 30, 2000, the Tenant chose to use the dining facilities at the Graduate Club. The agreement of the parties was that payment for food, gratuities and tax was due and owing at the end of each month. The Landlord properly applied the CT Page 6639 Tenant's food payments for the outstanding balance on food.
 Conclusions of Law
The Tenant has asserted twenty-one special defenses in this action. The primary defense raised, however, is payment. In this regard, the Tenant makes three claims: (1) the refusal of the Landlord to accept rent during November 2000, precludes it from collecting rent thereafter, (2) the payment made in December 2000 had to be applied to the December rent due, and (3) that by applying the December payment to the November rent, the Landlord waived the previous understanding that rent was to be paid weekly. None of these claims have merit.
The Tenant relies on Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,149 Conn. 149 (1961) for the proposition that a tender of rent made before a lease is terminated precludes the landlord from forfeiting the lease on the basis of nonpayment of rent. Id., 156. While this is a correct statement of the law, it is not applicable to the present case. In Mayron's Bake Shops, the tenant tendered rent before the landlord exercised its option to terminate the lease; in the present case the Tenant tendered rent after the Landlord, by service of a Notice to Quit, had unequivocally terminated the lease. As the Landlord correctly points out, its acceptance of "rent" in November would have renewed the tenancy. Altieri v. Layton, 35 Conn. Sup. 258, 259 (1979). The court finds that the Landlord's failure to accept the rent tendered during the pendency of the first summary process action does not bar the present case.
The Tenant's claim that the payment made in December had to be applied to the December rent is based on an incorrect construction of the lease. Were the lease for Room 9 to be an oral month to month lease, a rent payment tendered in one month would have to be applied to that month's tenancy. Kligerman v. Robinson, 140 Conn. 219, 221 (1953). This, however, was not a month to month lease. Indeed, the first summary process action was dismissed based on the tenant's assertion (and the court's finding) that it was a lease for a term commencing in September 2000 and ending in January 2001. The Tenant further claims that the pendency of the first summary process case during November precludes the Landlord from collecting rent for this period. Our law is clear that where the landlord and tenant have a lease for a term, the dismissal or withdrawal of a Notice to Quit or summary process action restores the lease and put the parties "back to square one." Housing Authority v.Hird, 13 Conn. App. 150, 156-57 (1988).[1] The Landlord, therefore, was entitled to collect rent for November. Finally, the Tenant claims that the Landlord had to notify him that it was applying the December 22nd
payment to the November rent. While one decision suggests that such CT Page 6640 notification is required, Hartford East Apartments v. Raum, Superior Court, Housing Session, judicial district of Hartford-New Britain (June 19, 1979, Spada, J.), in the present case the Landlord was entitled to apply the payment as it did for two reasons. First, on December 21, 2000, it presented the Tenant with a bill for the November rent. The court finds that this constitutes adequate notice of its intent to apply payments to the rental arrearage due. Second, this case is distinguishable from Raum because in that case subsequent rental payments were received by the landlord raising an equitable concern by the court that, absent notice, an unaware tenant could be kept in a constant state of breach.[2]
No such concerns are presented here.
The court also rejects the Tenant's claim that by applying the December payment to the November rent, the Landlord had changed the payment agreement such that payment in arrears was permitted. The Landlord's intent was consistently to collect the rent when due in accordance with the weekly payment scheme agreed to in September.
In sum, the court rejects all of the Tenant's payment defenses and finds that rental payments due in December, 2000 were not made.
Having resolved the payment issue, the Tenant's remaining special defenses, although numerous, require little discussion.
The Tenant's claim for retaliatory eviction is based on an incident on October 30, 2000 where the club manager called the New Haven Police Department because of concerns arising from the Tenant's irrational behavior. The court finds that the manager's actions were fully justified and that such action was in no way intended to interfere with the Tenant's pending litigation in federal court.
The Tenant's claim of an unlawful conspiracy among twenty-one landlords to deprive him of housing is not proven as to the Landlord. The court credits the testimony of the Graduate Club employees that they had no communication with or knowledge concerning the Tenant's prior landlords, employers or litigation.
The Tenant's claim of illegal entry by the police on October 30, 2000, is not proven and not relevant to the issues in the present case.
The Tenant's claim of constructive eviction based on his loss of dining privileges after the October 30, 2000 incident is not proven. The lease was for the room and although dining privileges were initially extended, the Graduate Club's decision to withdraw them did not constructively evict the Tenant. CT Page 6641
The Tenant's claim of a nationwide employment boycott is rejected as not relevant.
The Tenant's claim of duress is not relevant to this action based on nonpayment of rent. Similarly, the Tenant's claim of unconscionability is likewise not relevant to the present case. Finally, the Tenant's claims of fraud, CUTPA, public policy, subject matter jurisdiction, and apportionment of liability are rejected as not proven and largely irrelevant. The court finds that it has subject matter jurisdiction to adjudicate this case.
 Conclusion
For the reasons set forth above, the court finds in favor of the Landlord and against the Tenant both as to the allegations in the Revised Complaint and as to the Special Defenses.
Judgment of possession shall enter in favor of the Landlord for Room 9 of the Graduate Club, 155 Elm Street, New Haven, Connecticut.
So Ordered at New Haven, Connecticut this 30th day of May, 2001.
Devlin, J.